```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                   FORT SMITH DIVISION

RONALD W. JACKSON                                        PLAINTIFF

     v.              Case No. 05-2173

PRUDENTIAL INSURANCE COMPANY
OF AMERICA, a foreign corporation
doing business in Arkansas; and
FURNITURE FACTORY OUTLET, INC.,
GROUP POLICY NO. 79190                                  DEFENDANTS
```

                            MEMORANDUM OPINION

  Plaintiff brings this action pursuant to the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, alleging Defendants' decision to deny his claim for long-term disability benefits was unreasonable. This disability benefit claim is before the Court for decision on the stipulated administrative record (Doc. 4), Plaintiff's brief (Doc. 7), Defendants' brief (Doc. 13), Plaintiff's reply (Doc. 16), Defendants' reply (Doc. 22), and Plaintiff's sur-reply (Doc. 23). For the reasons stated below, the Court finds the Defendants' decision was supported by substantial evidence and is AFFIRMED. Plaintiff's claim is DENIED and Plaintiff's Complaint (Doc. 1) is DISMISSED WITH PREJUDICE.

**BACKGROUND**.

  Plaintiff was the chief financial officer ("CFO") for Furniture Factory Outlet ("FFO") from May 1993 until April 15, 2003. Plaintiff alleges that when he began employment with

FFO, the business consisted of twelve retail locations in three states, with approximately $12 million dollars in sales and eighty employees, with 100% manual accounting, except for check writing.  (Doc. 1).  As of April 2003, FFO had expanded to twenty-four retail locations, in four states, with approximately $50 million in sales, and more than 350 employees.  (Doc. 7).

Plaintiff's job as CFO included various duties which required a minimum of fifty - sixty hours per week. (Rec. at 344).  Plaintiff was covered under a group disability insurance policy funded by Separate Defendant FFO and issued by Separate Defendant Prudential Insurance Company of America ("Prudential").  This long-term disability insurance benefit policy provided for the replacement of income loss due to disability.  On April 26, 2003, Plaintiff filed his claim for disability benefits from Prudential.  By letter dated May 12, 2004, Prudential informed Plaintiff of its decision to terminate Plaintiff's LTD benefits.  (Rec. a 469).

On December 14, 2005, Plaintiff filed this action under ERISA seeking to overturn the termination of long-term disability benefits by the Claims Administrator.

**DISCUSSION**.

Under ERISA, a denial of benefits by a plan administrator must be reviewed *de novo* unless the benefit plan gives the

administrator discretionary authority to determine eligibility for benefits or to construe the terms of the plan, in which case the administrator's decision is reviewed for an abuse of discretion. *Woo v. Deluxe Corp.*, 144 F.3d 1157, 1160 (8th Cir. 1998) *citing Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Accordingly, the Court must be guided by the language of the plan to determine the proper standard of review.

The Plan provides, in pertinent part, "Prudential . . . as Claims Administrator . . . the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits." (Rec. at 40). Therefore, Prudential's decision can only be reviewed for an abuse of discretion.

The Eighth Circuit Court of Appeals has "variously defined . . . an abuse of discretion as being 'extremely unreasonable,' 'virtually' the same as arbitrary and capricious, and 'extraordinarily imprudent.'" *Shell v. Amalgamated Cotton Garment*, 43 F.3d 364, 366 (8th Cir. 1994) (citations omitted). "The proper inquiry into the deferential standard is whether 'the plan administrator's decision was reasonable; i.e., supported by substantial evidence.'" *Cash v. Wal-Mart Group Health Plan,* 107 F.3d 637, 641 (8th Cir. 1997) *(*quoting *Donaho v. FMC Corp.*, 74 F.3d 894, 899 (8th Cir.

1996)).

"While the word 'reasonable' possesses numerous connotations, this court has rejected any such definition that would 'permit a reviewing court to reject a discretionary trustee decision with which the court simply disagrees[.]'" *Id.* at 641 (citation omitted). A decision is reasonable "if 'a reasonable person could have reached a similar decision, given the evidence before him, not that a reasonable person would have reached that decision.' *Id*. If the decision is supported by a reasonable explanation, it should not be disturbed, even though a different reasonable interpretation could have been made." *Id.* (citation omitted).

Where there is a difference of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to find the employee not disabled unless "the administrative decision lacks support in the record, or . . . the evidence in support of the decision does not ring true and is . . . overwhelmed by contrary evidence." *Donaho*, 74 F.3d at 901 (8th Cir. 1996).

Plaintiff completed and submitted to Prudential an "Employee Statement" in which he reported that his job was "Sedentary." The Employee Statement described that term as "Negligible Weight" and "Mostly Sitting." (Rec. 405). In the

Statement, Plaintiff wrote that his condition interfered with his ability to work because of "inability to concentrate, memory problems, and inability to exert myself physically, feeling totally fatigued all the time." (Rec. At 406). Dr. Frederick, an internal medicine physician, submitted an Attending Physician's Statement ("APS") dated May 1, 2003, in which he reported Plaintiff had sleep apnea and impaired left ventricular systolic function. (Rec. At 401). Dr. Frederick explained Plaintiff underwent a sleep study that confirmed a diagnosis of sleep apnea, and an echocardiogram that demonstrated Plaintiff had an ejection fraction ("EF") of 20%. (Rec. at 402).

Dr. Frederick's report detailed the Plaintiff's condition, and listed his medications, to include use of a Continuous Positive Airway Pressure ("CPAP") machine at night to treat his apnea. (Rec. 412). On January 3, 2003, Plaintiff underwent a transthoracic echocardiogram at the Mayo Clinic that reflected an EF of 25%. (Rec. at 363). On January 7, 2003, Drs. Martha Grogan and Allison Pritchett, of the Mayo Clinic's Heart Failure Clinic, each evaluated Plaintiff. Both doctors concluded the sleep apnea was the most critical problem, but with treatment, that condition could yield improvement of Plaintiff's other conditions. (Rec. 372). A third Mayo Clinic doctor, Dr. Evans, likewise

concluded Plaintiff's left ventricular dysfunction, low EF, and fatigue symptoms, all "stood a good chance of improvement with treatment of sleep apnea and weight loss."  (Rec. at 376).

On April 15, 2003, the last day Plaintiff worked, Plaintiff saw Dr. Frederick and his progress notes reflect that he returned for follow-up of his heart condition and EF, and that he had used his CPAP regularly since his visit to the Mayo Clinic.  Plaintiff reported he had "noticed remarkable improvement in his sleep and daytime energy."  (Rec. at 397).  The note reported "considerable improvement since the primary study," and an echocardiogram was completed and showed an improved EF from 20% to 45%.  (Rec. at 397).

On June 10, 2003, Plaintiff returned to Dr. Frederick, who noted that he "remains as active as he can be, does outside work with string trimmers and the like . . .."  (Rec. at 395).  On July 15, 2003, Plaintiff contacted Prudential to explain that his most recent test results were unavailable, but he had been advised that his EF was now 40 - 42%.  Based on this information, Prudential's registered nurse Mary Ann DeSantis noted that Plaintiff had worked for years with an EF of near 20%, and that an EF of 40 - 42% "is sufficient for light duty work, and [Plaintiff's] job may be primarily sedentary."  (Rec. at 416).  Nurse DeSantis concluded if

confirmed that Plaintiff's job was sedentary, and his EF was 40% or higher, then there was no evidence to support his inability to return to work. (Rec. at 416).

Prudential was unable to immediately obtain a copy of Plaintiff's echocardiogram but awarded Plaintiff LTD benefits from July 16 to July 31, 2003, while it awaited a copy of the report. (Rec. at 417). On July 25, 2003, Separate Defendant FFO confirmed that Plaintiff's job as CFO was a sedentary job. (Rec. at 448). That same day, Prudential attempted to contact Plaintiff, but learned he could not come to the phone because he was mowing the yard. (Rec. at 448). Prudential called back later in the day and was advised Plaintiff was still mowing because he had "a huge yard." *Id*.

On July 23, 2003, Dr. Frederick's office supplied Prudential with a copy of the July 8 Echo report that reflected the study was limited, due to Plaintiff's "body habitus." (Rec. at 354). The interpreting physician noted if EF needed to be evaluated, a MUGA scan would be suggested. *Id*. On September 15, 2003, Prudential medical director, Dr. Kowalski, reviewed the available medical information and determined the documentation did not support Plaintiff's alleged disability. (Rec. at 426). On September 18, 2003, Plaintiff underwent a MUGA scan that demonstrated Plaintiff's EF was 48%. (Rec. at 332).

Prudential received the September results and updated records, and conducted a more extensive review by Dr. Fegan. He noted Plaintiff had a history of activities that indicated an ability to work in a sedentary job, and that he now had an EF of 48%[1]. (Rec. at 427). He added the medical information contained no evidence of a cognitive impairment and concluded the information in the file demonstrated Plaintiff had the functional capacity to perform his sedentary job. *Id*.

On November 13, 2003, claims manager Michael Dalessio reviewed the file to determine whether Prudential's initial termination decision was appropriate. (Rec. at 428). Mr. Dalessio noted Plaintiff's ability to perform light yard work, his improved medical conditions, Dr. Frederick's notes, Dr. Kowalski's opinion, and Dr. Fegan's opinion. Mr. Dalessio recommended that Prudential uphold its decision. *Id*. On April 15, 2004, a Prudential claims manager referred Plaintiff's claim file to a Prudential medical director for an additional review. (Rec. at 432).

On April 22, 2004, Prudential medical director Dr. Joyce Bachman, reviewed the file and authored a summary and analysis of Plaintiff's claim in which she concluded there was no

---

[1] An ejection fraction between 55 and 75 percent is considered normal. A low ejection fraction may be a sign the the heart is somewhat weakened. *e.g.*, Definition and Explanation of Ejection Fraction, *http://heart.healthcentersonline.com/heartfailure/ejectionfraction.cfm* (last visited February 21, 2007).

objective evidence of a physical or mental impairment. (Rec. at 433 - 437). Based upon its review of the file, and the opinions of Prudential physicians, Prudential determined that its original decision was correct. (Rec. at 438). By letter dated May 12, 2004, Prudential informed Plaintiff of its decision. (Rec. a 469).

Plaintiff contends the Claims Administrator was unreasonable in denying Plaintiff's long-term disability benefits for several reasons: Plaintiff's job as CFO was not sedentary; Plaintiff qualified for Social Security Disability benefits; the denial was made in bad faith; the denial demonstrated a serious breach of the Plan Administrator's fiduciary duties to Plaintiff; and the plain language of the Plan was inconsistent.

Plan participants are eligible for LTD benefits if they are "totally disabled." (Rec. at 28). The FFO Plan defines "Total Disability" for purposes of LTD benefits as follows:

> "Total Disability" exists when Prudential determines that all of these conditions are met:
> 
> (1) Due to Sickness or accidental injury, both of these are true:
>
>> (a) You are not able to perform, for wage or profit, the material and substantial duties of your occupation.
>>
>> (b) After the Initial Duration of a period of Total Disability, you are not able to perform for wage or

>     profit the material and substantial duties of any
>     job for which you are reasonably fitted by your
>     education, training, or experience.  The Initial
>     Duration is shown in the Schedule of Benefits.
>
>     (2) You are not working at any job for wage or profit.
>
>     (3) You are under the regular care of a Doctor.

Rec. At 28.

Plaintiff argues the medical history information supports a conclusion for total disability.  Plaintiff buttresses this theory with the Social Security Administration's award of long-term disability benefits for the Plaintiff. (Rec. At 28). Additionally, Plaintiff argues that Prudential violated a provision of ERISA by failing to provide Plan documents to Plaintiff.

Separate Defendant Prudential contends that substantial evidence supports its decision to deny long-term disability benefits to Plaintiff.  Plaintiff's treating doctor, Dr. Frederick, documented that FFO terminated Plaintiff after "more frequent arguments with the owners." (Rec. at 397).  The record contains no evidence to support Plaintiff's contention that he quit work in April 2003 because of a medical disability.  All of Prudential's doctors and nurses who reviewed the medical evidence concluded that Plaintiff had the ability to perform his sedentary job.

Moreover, Dr. Frederick confirmed Plaintiff's ability to mow the lawn and exercise for forty minutes on a treadmill.

For all these reasons, Prudential concluded its decision was not arbitrary or capricious. Prudential alleges that both ERISA and the ERISA Statement required the Plan Administrator to be responsible for providing Plan documents upon written request from a claimant, not the Claims Administrator. Separate Defendant FFO was the Plan Administrator and Separate Defendant Prudential was the Claims Administrator.

Defendants argue the decision of the Social Security Administration was not disregarded, but that in any event, Prudential determined eligibility for benefits based on the terms of the Plan. Prudential was not simply required to follow the decision of the SSA. *Riedl v. Gen. Arm. Life Ins. Co.*, 248 F.3d 753, 759 (8th Cir. 2001)(SSA's determination is not binding but it is admissible evidence to support a claim under ERISA).

The Court finds Prudential's decision to terminate Plaintiff's LTD claim reasonable and not made in bad faith. The Court finds Plaintiff's request for statutory penalties against the Defendants misplaced and therefore denied.

**CONCLUSION**.

Based on the reasons stated above, the Court **AFFIRMS** the decision of the Defendants and finds it supported by substantial evidence of the record. Plaintiff's claim is **DENIED** and hereby **DISMISSED WITH PREJUDICE** with each party to

bear its own costs and fees.

IT IS SO ORDERED this 22nd day of February, 2007.

>/s/ Robert T. Dawson
>ROBERT T. DAWSON
>UNITED STATES DISTRICT JUDGE